Deceit, or gross negligence, by a financial regulator in financial transactions is cause for removal. In a two-week period in 2021, Lisa Cook submitted mortgage applications for two properties in Michigan and Georgia. In both, she told the lender that, within 60 days, she would occupy that property for one year as her principal residence. As President Trump stated in removing her, it is inconceivable that she was unaware of the first commitment when making the second, and it is impossible that she intended to honor both. Such behavior impugns Cook's conduct, fitness, ability, or competence to serve as a governor of the Federal Reserve. The American people should not have their interest rates determined by someone who was, at best, grossly negligent in obtaining favorable interest rates for herself. Cook's conception of cause contradicts the term's long-standing meaning and overrides Congress's deliberate decision not to impose the inefficiency, neglect, or malfeasance standard here. Her claim that she has a property interest in her public office was roundly rejected by the founding generation as pernicious in a Republican system of government. Her claim that the statute grants her notice in a hearing contradicts this Court's cases, requiring very clear and explicit language to restrict the President's removal power. Any such process would be futile because, for months, she has never personally disputed the substantial truth of the material in question. Finally, the remedy she obtained, a preliminary injunction countermanding the President's decision and reinstating her to office, violates long-standing principles of equity and was conspicuously non-existent in our nation's history from 1789 until 2025. I welcome the Court's questions. General Sauer, this isn't central to the case, but it is an antecedent point. On what basis are we to conclude that the Federal Reserve is an executive branch agency and hence that the President does have removal authority? Justice Thomas, excellent question. I would say two things about that. The first one is, of course, that there's an academic dispute about whether or not the Federal Reserve's open market operations constitute executive power or something else, essentially private conduct. However, Congress has, over the years, kind of packed on traditional executive powers on the Federal Reserve, so the Federal Reserve can issue regulations about reserve requirements in banks and even credit card fees and so forth. Even if the Court were to think that some of what the Federal Reserve does isn't executive at all, certainly there are traditional executive powers at issue here, and therefore we contend that this, even though we haven't disputed the validity of the Article II removal restriction here, this case is not transparent to Article II, and certainly there's a statutory authority that's very plain here because it says removable for cause by the President, so the statute is unambiguous giving the President removal power, and we contend that at least there's What's kind of been packed on to the Federal Reserve over the years by Congress is clearly quintessential executive power, and we acknowledge what the Court said in Wilcox, which is that it's a quasi-private, uniquely structured entity that stands in the distinct historical tradition of the first and second banks of the United States, and therefore we have not challenged the removal restriction in this case. Before we get back to the legal questions, I want to start with a little factual one. You began by talking about deceit. Is what you said after that apply in the case of an inadvertent mistake contradicted by other documents in the record? We would say yes. For example, the President's removal order says either this is deceit or at least it's gross negligence, and now obviously they've released their letter of counsel, not from Cooke herself, two days before the close of the briefing here where they contended that it was an inadvertent notation, but of course it's the sort of inadvertent notation that people could be indicted for, at least if federal regulators are forced to buy back their loans. It's a very significant representation that to the lender, this is going to be my principal residence, because obviously you get a better interest rate if that is in fact your principal residence. So it suffices from our perspective, and therefore there's really no material facts in dispute that the President determined that this is at least gross negligence, even if it was inadvertent or a mistake. It's quite a big mistake, so to speak, in a key financial representation made in the context of interest. Well, I mean, I suppose we can debate that, how significant it is in a stack of papers you have to fill out when you're buying real estate. But I gather under your position it doesn't make a difference, right? In other words, the determination of cause is unreviewable, right? So it doesn't make a difference whether this was an inadvertent mistake or whether it was a devious way to get a better interest rate. It doesn't matter for you, right? Let me put it this way. We would contend there's judicial review kind of at the outer perimeters of cause, whether something goes to conduct, fitness, ability, or competence at all. But once you're within that, and we clearly are here, then there would be deference to the President. We derive that from at least three sources. First of all, the statutory language, cause without further qualification, is itself in its plain language a broad control of authority on the President himself. Secondly, we think that places that within the line of cases going from Martin against Mott through Dalton against Specter and beyond, Payne and so forth, where the President has broad discretion and the Court has consistently held in those cases where the President's granted this broad discretion and that's not judicially reviewable. And there's statements to that effect, obviously, in Marbury itself that they disregard pages 165 and 166 of Marbury. But even if the Court doesn't accept that, there's a further layer here, which is that they've conceded this is an ultra-virus challenge, and this Court held last term that the standard of reviewing an ultra-virus challenge is very, very high for them and very deferential to the President itself. It kind of dovetails with our Dalton and Martin argument as well. In an ultra-virus challenge, the burden would be on them to show that what the President did is entirely in excess of his delegated powers and contrary to specific prohibition in the statute. So there's kind of three ways to get to the same conclusion there, which is that once the President's made a determination, it clearly does relate to conduct, fitness, ability, or competence for that office, then at that point, there's no work for the reviewing Court to do. The traditional discretion to the President's determination would kick in. Counsel, were any of these questions except the constitutional question decided by the D.C. Circuit? The D.C. Circuit, in its stay opinion, relied exclusively on the sort of property interests  Notice of opportunity to be heard. That's what it said the Constitution required, correct? It said that, yes. That's the only issue it addressed. It did not address all of the things you've talked about today. What the definition of cause is, including whether it includes pre-office conduct and how much or what nexus there has to be between pre-office conduct and post-office conduct. One could imagine that what would constitute for cause during office would be different than what would happen pre-office. Even yourself below said, if something was known before confirmation, you likely can't rely on it. You haven't quite said that up here. But logically, pre-office has a different temporal connection. Then, the court didn't address whether the President's determination of cause is reviewable and under what standard. Ultra-virus seems to me to be whether or not another, and that's what all our cases have ever said about ultra-virus situations, whether another entity, another adjudicatory entity, has jurisdiction or we do. Three, whether Cook has a right to notice and hearing under the statute and what that means and what remedy, if any, Cook can seek now or finally in the case. You ask us today in this emergency application to finally decide these issues. I want to know why. Meaning, the President, by your own admission, cannot fire someone for disagreeing with his policy choices. You've conceded that. Correct?  All right? So, it's not as if keeping her is going to thwart any right he has to run the department because he has none. He's conceded that. On policy, he does not. Now, it's not as if she's been incompetent, negligent, or committed malfeasance while in office. This is something pre-office. So keeping her in office is not causing an immediate harm to the agency. Number three, we know that the independence of the agency is very important and that that independence is harmed if we decide these issues too quickly and with not due consideration. So waiting, to me, to have at least the lower courts look at these issues first, is not makes the most sense to the public's confidence and to the world's confidence about the due process of law. Explain to me why the President's harm is greater than the public's, greater than the Federal Reserve, who deserves to have people acting that have been in office. And number three, why we should disrupt, as we said in Wilcott, the disruptive effect of repeated removals and reinstatement of officers. Why shouldn't we wait until the end of this case, where all the issues are clear and where we make a final decision as to whether she should have been removed or not? Let me start by addressing that last point. We are seeking a stay of an unprecedented preliminary injunction restoring a principal officer of the United States after being removed by the President of the United States. 112 years, and it's unprecedented that any Federal Reserve officer has ever been removed. So the unprecedented nature of this case is a part of what the President did, not what Ms. Koch did. I think that statement has to be qualified by the recognition that there have been situations where governors have been credibly accused or found to engage in financial improprieties and those governors have resigned for financial improprieties that are quite analogous to what is at issue in this particular case. But I want to make the fundamental point that in Sawyer, this court held that a preliminary injunction was not available to restore an officer. Sawyer was a preliminary injunction. It's a preliminary injunction against the... That's true, but weeks later in Drago, we permitted an officer who was still there to stay. So that was a case of reinstating someone. We have plenty of cases that say keeping someone in place who hasn't left yet is different than issuing a preliminary injunction. I think the court's referring to the Delgado case. In that particular case, it was a... Or it was a writ of mandamus to an inferior there, the clerk, to recognize the de facto officers when there is dispute about who had been validly elected to be the city commissioner or whatever the statute was. And this court takes the final judgment in mandamus to say you have a ministerial duty to recognize the de facto officer. That is totally different than issuing a preliminary injunction. Keep in mind, there is no such thing as final mandamus. In fact, Judge Friendly once described that as the starkest of solacisms. There is no such thing as preliminary writ of mandamus. Judge Friendly described that as the starkest of solacisms. What this court held in Sawyer's, there is no jurisdiction to issue a preliminary injunction restoring a public officer to office. And that's the holding of the court. She never left. She's still there. She is reinstating what the court framed its holding as. There is no jurisdiction over the appointment or removal of inequity of public officers. So it does not turn on whether or not she's sort of, you know, stoutly staying in office or whether or not she's gone in that suit later. That doesn't, nothing turns on that. Jennifer, can I ask you a question that's also related to the stay factors? Justice Sotomayor brought up the public interest here. And we have amicus briefs from economists who tell us that if Governor Cook is, if we grant you your stay, that it's a trigger of recession. How should we think about the public interest in a case like this? Two things to say about that. One is, if you look at what actually happened here, she was removed on August 25th and the stock market went up for the next three days. So we've already had a kind of natural experiment, so to speak, about whether or not the predictions of doom will really be implemented. And surely that if investors are jittery or whatever the argument is, you would have seen that on August 25th and you did not see that. In fact, you have to be surprised. Well, I'll interrupt you there to say that I don't want to be in the business of predicting exactly what the market's going to do. I agree. And that's why I think the court ought to consider all those amicus briefs and their sort of predictions of doom with a fairly jaundiced eye. What the court has to do is weigh, essentially you have those amicus briefs as a reflection of very elite opinion. Elite opinion. But there's a risk, General Sauer. I don't want to be responsible for quantifying that risk. I'm a judge, not an economist. But if there is a risk, doesn't that counsel in the stay posture when the equities are at stake caution on our part? I think the court has to weigh that risk against the risk that there will be a permanent damage to the Federal Reserve's credibility from allowing an officer, a governor to remain in office who's engaged in this kind of behavior before she can be... Well, do we also engage in some weighing of our own about how serious we think the misbehavior was in the stay posture? I'm not talking about once the case was here on the merits, but if she were accused of murder or something like that, if we're talking about something that was really an infamous crime, should we take the nature of the crime into account in the stay posture in the weighing of the equities? I think what the court ought to take into account is the close nexus between the conduct and issue here and the duties of this incredibly powerful position that has sweeping powerful authority over the entire United States economy. The governor set interest rates for ordinary Americans all across the country. And here, there's the appearance of having played fast and loose or at least been grossly negligent in getting favorable interest rates for herself. What's the message of ordinary Americans that comes out of that is the question for the  And how do you weigh that against the elite opinion that's reflected in the amicus res. Obviously, President Trump's voice speaks to that concern of ordinary Americans. I think with the balance of the equities, what the court ought to do is look at the merits, which are extremely strong for us, and then look at its traditional and can stay factors. The court says, when the government is a party, the irreparable harm to the government merges with the public interest. And here, we have traditional irreparable harms, injuries to the president's ability to remove a principal office of the United States. When you look at, for example, the originalist evidence we've talked about in the decisions of 1789, when everybody said, or both camps were saying, of course, the president can engage in suspensory removals, and we have a preliminary injunction that is conspicuously non-existent in your words and Casa, you know, for 225 years of American history. Well, Mr. Sowers, General Sowers, excuse me, I guess I think you may have to be a little bit more specific with respect to the irreparable harm that you are alleging. Because really, as Justice Barrett sort of indicated, we are in a stay posture here. So the question is, to what extent do we believe that a president or the public is harmed by allowing Ms. Cook to remain in her position for the pendency of this case? I'm not sure that we have evidence here that Ms. Cook is an immediate threat to the public, that she's been in this position for a long time. The kinds of things that you're pointing to, as Justice Sotomayor indicates, are not related to conduct while in office. So it would seem to me that on the stay factors, you would have to say more about the harm of leaving her there for the next however many months while this case is being litigated. We have a remedy here, which is a preliminary injunction that this Court squarely held in Sawyer there was no jurisdiction to issue. Yeah, but I'm not talking about the Court's power to do it. I'm talking about assuming we have the power for the moment. I appreciate that you say we don't, but assuming that we do, the question is what is the harm of allowing that injunction to remain because she's in office now and would just continue? Among other reasons, we assert grievous irreparable injury to the public perception to the Federal Reserve of allowing her to stay in office. They argue that this is going to cause the markets to tank when they first heard they didn't tank. Do you have evidence related to the public perception, or is this just the President's view? The President has made that determination. It's reflected in the language of the dismissal order, and as I discussed earlier, it's closely. Did the President make that determination based on evidence presented to him in the context of some kind of hearing related to Ms. Cook's conduct? The Federal Reserve Governor who sets interest rates for the entire country appears to have engaged in improper behavior. No, no, no, I understand what you're repeating. You're repeating the allegation. What I'm asking you is the evidence that supports that allegation. Traditionally, when an allegation is made about someone's misconduct or whatnot, there's an opportunity for that person to present evidence, for the other side to present evidence, and even if the President was the final arbiter of this, one would expect that he would do so on the basis of evidence. So what I'm trying to understand is what is the evidence that has been presented and considered with respect to Ms. Cook's alleged misconduct? Well, the removal order addresses that because it is... What is the removal order, the two social posts? No, it's the August 25th letter, I think it's DOC 1-4 in the District Court, but the removal order addresses that. The evidence is you have mortgage applications within two weeks to each other that make clearly conflicting representations. Was Ms. Cook given the opportunity in some sort of formal proceeding to contest that evidence or explain it? Not a formal proceeding. She was given an opportunity in public because... In the world? Like she was supposed to post about it, and that was the opportunity to be heard that you're saying was afforded to her in this case? Yes, and she's had plenty of opportunities in the ensuing months where we've had ongoing litigation where there's never been a personal statement addressing that or justifying it. General, let's just suppose with me hypothetically for the moment that the court read the act to require notice in a hearing. I assume everybody has notice now. Here we are. What would that hearing look like? I would point to what the court has said in Vermont Yankee, which this court is very reluctant to dictate procedures to even federal agencies, and here the court would be dictating, or a court would be dictating procedures to the president. I think they rely heavily on Loudermill. Obviously we dispute if there's any notice in hearing requirement, but Loudermill requires only very minimal, flexible procedures. That'd be calling Ms. Cook into the Roosevelt room, sitting across a conference table, listening for, I don't know how long, how much evidence is a lawyer required, and then making a decision. Could that suffice, you think? What would be required? It would probably, if the court were to conclude that, it would have to be entirely dependent on the executive to decide, and that's what the case law indicates. Certainly, I think the question points out a great weakness in their argument, which is that the word cause does not include notice in a hearing on its face. Congress knows how to provide notice in a hearing. It did so in the NLRA one month before it reenacted the four cause restriction here in 1935, and because it's not there, the court has nothing to provide guidance on that point, and if the court were to conclude that, it would be up to the executive's discretion. Just a meeting across a conference table, finished with, you're fired? All Loudermill says is that you have to be told what the basis is of the allegations against you, and give a chance to tell your side of the story. We believe that was provided in the five-day window between the true social posts and the removal letter. And then you mentioned on remedy that there's no such thing as a preliminary injunction for mandamus, and I just wanted to hear you a little bit more on that. You mentioned Judge Friendly. Please, thoughts. So, the contention in the amicus briefs is that you could rely on Delgado to sort of bypass the holding of Sawyer, and say that mandamus can provide the essence, essentially the same relief as a preliminary injunction. I guess the argument would be you'd have to mandamus everybody, so all the members of the board, to treat her as if she's still a governor. All the staff to treat them as if they were still a governor, because Delgado held, where there's the city clerk who can't decide who is validly elected city commissioner, the court held you could mandamus that clerk to recognize the de facto officer in the interim. And that doesn't work for a couple reasons. First of all, this is a preliminary injunction. Mandamus would have to be a final judgment, and that's what Judge Friendly said. There is no preliminary mandamus. That's the sarcasm of solacism. Do I understand you, General, going back to Justice Gorsuch's first question, to continue to maintain that, in fact, there is no requirement for notice and opportunity for a hearing, is that right? Absolutely, yes. And why is that, just because it's not stated in the statute? It's not stated explicitly in the statute, and Congress knows how to provide that, because it did so a month earlier in a similar statute, and has done so in many, many statutes. It doesn't do that. I thought that, with respect to the neglect and efficiency standard, you do recognize notice and a hearing for that, but not in this statute. Why the difference? Because neither is stated. Yeah, two reasons. And both Shurtleff and Reagan, this court, expressly recognized that that phrase, I-N-M, or specified causes, would bring with it notice and a hearing. And that's part of the court's holding in Shurtleff, as I read it, because there it was an I-N-M standard, and there's a removal with no notice or hearing, and the court held, well, clearly this wasn't for I-N-M, because it was notice and a hearing. I think your reasoning would be that that was a mistake in holding, because since it's not stated in the statute, there's no need for notice and a hearing. Not exactly, because the old soil argument that we reject as to just simply cause is, we admit, much stronger when it comes to specified causes. So we don't think the court necessarily got it wrong in Reagan when it said, specified causes mean that notice and a hearing are provided, because the case law, it's the one point in which the sort of background case law does seem to be unanimous. On the other issues where they contended, the case law all goes in one direction. You have their own sources saying they're all over the map, they're directly contradictory. But the outcome of your position is that in this case without, where you don't have the inefficiency neglect standard, the president need not provide any notice, the president need not provide any hearing, the president just really has to say, Ms. Cook, you're fired. He has to provide a cause. We contend that there has to be a cause, something that relates to conduct, fitness, efficiency or competence. We concede it cannot be for policy disagreement or for no reason at all or at will. General Sauer, if you're correct that courts do not have the authority to reinstate a removed officer, why are we wasting our time wondering if there's cause or not? Because even if we say, yes, there is cause, shouldn't have removed her, but we don't have the authority to order her reinstatement. What's the, how is that consistent with the time and energy being spent on determining if there's cause? We agree that that's an alternative basis. As we said in our brief, that's reason enough to rule in our favor and we have a holding of the court, Sauer. We also have this tradition I was referring to earlier of recognition that runs from the decision of 1789 to all the opinions in Myers, it's alluded to in Wiener and so forth, recognizing the president's power of interim or suspensory removals. So we agree that's an alternative, that's an independent basis for us to prevail. Well, it's an independent basis. I guess it's not independent in the sense that if that's right, the other one is irrelevant, right? It seems to me that if there is any level of cause and you indicate that there is some level of cause, right, well then you can't be right about the idea that the courts can't order anybody who's been removed to be reinstated. There is a traditional remedy to reinstate, we don't dispute, there's a traditional remedy to reinstate wrongfully removed officers, which is mandamus. But they don't argue mandamus here and the reason they don't argue mandamus is they face a number of insuperable obstacles to prevailing in mandamus. One is, of course, going all the way back to Marvin against Madison, you can't mandamus the president, it's a discretionary act. In addition to that, there is no preliminary writ of mandamus as Judge Friendly pointed out in the Seventh Circuit has held. In other words, and keep in mind that the standard in mandamus would be clear and indisputable right to relief. And in fact, this is an ultra-various challenge where the standard is exactly the opposite. So there is a circumstance in which a court can order the reinstatement of a wrongly removed officer. But there is a traditional remedy, mandamus. Here, obviously, it would be quo oronto if there were two competing claimants, but where there's just the one, that would be mandamus. And they have not argued mandamus, they're trying to find their way around mandamus because the standards to prevail under mandamus are insuperable and they clearly cannot meet them. But General... Thank you. I'm sorry. Justice Thomas? Justice Alito? Is there any reason why this whole matter had to be handled by everybody, by the executive branch, by the district court, by the D.C. Circuit, in such a hurried manner? You began by laying out what you claimed to be the factual basis for the for-cause removal. But no court has ever explored those facts. Are the mortgage applications even in the record in this case? I know that the text of the social media post that screenshots of the mortgage applications is in the record. I don't recall the paperwork itself is in the record, in the district court's record. So when this was before the executive branch, it was handled in a very cursory manner. The district court decided the case on the ground that for-cause doesn't mean anything that happened before the person took office. And I'll question Mr. Clement about that when he stands up. The D.C. Circuit decided it on two grounds. The same as the district court, and that there's a property interest in holding the position of governor of the Federal Reserve Board. Am I right on that? Not exactly. The D.C. Circuit state panel relied only on the property interest, did not rely on the pre-office misconduct. And that's insupportable. Well, did it not hold that that's what for-cause means? My recollection is that the D.C. Circuit, the Garcia opinion in the D.C. Circuit relied solely on Loudermill and the due process property interest, which is baseless of the reasons we say. And now the district court relied on the twin grounds, both that Loudermill rationale and also the- All right. I stand corrected on that. But those are the only two issues that were decided by the lower courts. That's correct. Justice Sotomayor? I have a couple of follow-ups on Reagan and Sherliff. You're relying on those two cases for your proposition that cause could be whatever the person, the authority decides. But Reagan and Sherliff were very careful in holding that the only reason that was true was because there would be life tenure involved otherwise. It was very careful to distinguish its holding from cases in which there were a tenured position and there was a for-cause provision. So you're extrapolating, correct? I disagree with that. We read Reagan differently. If you have that, those two key paragraphs- No, we can both look at it. Don't talk about fixed term at that point. I think the direct- But the court recognized the rule, and I'm quoting from the case, quote, where causes of removal are specified by statute as also where the term of office is for a fixed period, notice and hearing are essential. Here, you need for-cause, and there's a fixed period of tenure. And Reagan very clearly said notice and hearing are required. So if I move on from that, I go back to Justice Alito's question of you. I thought, and the Chiefs, I thought there was a factual dispute. As I understood it, Ms. Cook's letter, her attorney's letter, and quite frankly, I never understood that a letter from a lawyer wasn't a representation by a client. This is a new standard I've never heard of before in an informal proceeding. The President can go by social media, and one believes that that is adequate notice under law. I'm hard-pressed to think a letter from a lawyer is not notice from the adversary. But we can move on from that. The letter from Ms. Cook says, the Michigan Bank gave me permission to rent because I got a job in Washington. I had to move from New York when I got my job in Washington. And frankly, I renovated my apartment the year before, thinking I would be in New York for the rest of my life. Things change, and the bank in Michigan, at least they represent, will say there was no deceit of them. As to the mortgage issue in Atlanta, Ms. Cook's lawyer represents that the paper submitted to the bank disclosed the fact that this was a vacation home. So they may not have experienced deceit. If they didn't experience deceit, then you're left with gross negligence, and the question becomes, is it grossly negligent to make a mistake on a mortgage application? And I don't know that gross negligence has ever risen to the level of a mistake. So there is a factual issue. Now the question is, who resolves that issue, the level of review of that decision, and those are all questions, as Justice Alito pointed to, have not been addressed below, correct? What was addressed below? Is that, I think, exactly what... Just that you cross the site to notice in a hearing by the circuit court, and for cause being something that has to be only what's at the time in office. I do agree with you, common law did permit pre-office conduct to be considered, but only if for an infamous crime. I don't think this rises to an infamous crime. If I could say two things about that. First, on the narrow point about whether or not a letter of counsel can create a factual dispute in this context, that's the holding of this court in Conn against Velgar, where the court said that suggestions of counsel are not enough, it's the party who has to do it. So there were representations of counsel there, and the court held that... That's an illegal proceeding. This is an informal proceeding. Legal proceeding. Yeah, the point was there had never been any representation by the party in any context, formal or informal, and that's exactly what we have here. That's the one point. I can't remember the second point. I was going to make a response to that. Thank you. Mrs. Kagan? General, can I take you back to the Chief Justice's question, the remedial question, the last one? Because in response to him, you said kind of no worries because there's a traditional remedy of mandamus. But then, pretty much in the next sentence, you said, but of course, mandamus doesn't apply here because it's the president. So, I mean, when we're talking about the president's removal powers, you're essentially saying that the only remedy doesn't apply. And that brings you back to the Chief Justice's question, which is, well, if there's no way to reinstate, what does this cause requirement amount to? Well, Congress adopted a policy choice to impose on the president a cause requirement and not an I&M requirement. As Justice Alito pointed out in the CFPB funding case, this was a hard-fought compromise between two influential candidates. No, but I think if there's some kind of cause, it doesn't have to be inefficiency, neglect, malfeasance. But there is some kind of cause that's necessary. You said that yourself in response to my last question, that the president has to state a cause. But if then you're saying, well, even if he flunks whatever that requirement is, there's no way to reinstate the person. There's no way to use the mandamus route. What does it amount to? It seems pretty, it seems non-effectual. It is a, if it is non-effectual, which we dispute, we think it's very effectual. And it's proven to be effectual in history because it provides the governors with the most important protection, which is that Congress apparently wanted to give them, which is removal for, protection against removal for policy disagreements. And governors have not been removed for policy disagreements. Except there's no way, there's no way to test that. There's no way either that the person can come in and have that meeting in the Oval Office or the Roosevelt Room or wherever else saying, I think you're really getting rid of me for policy reasons. There's no way for a court to evaluate that. The president just has to say, I'm removing you for cause. You committed gross negligence. And there's no question for all the reasons we discussed in our briefing that that confers broad discretion on the president. Now there's an outer perimeter that is subject to policing by judicial review, policy disagreement, no cause at all, and so forth. But that is good, confers broad discretion on the president. But even if it was de novo review here, gross negligence in a very important financial transaction that has this close nexus with what a governor tries to satisfy it. Does the president have to say what the gross negligence is? Or can the president just say, I'm removing you. It's not for policy. It's for gross negligence. So we have, I think, conceded in the briefing that that sort of determination would be subject to judicial review because he hasn't specified the cause. Now the case law, that's a borderline case. The case law goes in different directions on that. Garland, one of the cases that we cited in our brief kind of goes the other way in a way that'd be stronger for us. But we haven't disputed that. In this case, that if it was, there was no cause provided at all, then that would be subject to judicial review and likely an invalid removal. Thank you. Justice Gorsuch. Just to follow up on Justice Kagan's questions, I think in them was the question, if you think mandamus doesn't apply to the president at all, ever, how could you ever test the things you say can be tested? He has to remove for cause. He can't remove for policy disagreements. That might be one. The president says, I remove you for policy disagreements. He's open about it. Let's say. Could happen, right? You'd say still mandamus is not available, I think, wouldn't you? I think we would. Now that might be a closer case because the mandamus standard is clear and a disputable right when we have conceded that policy disagreement would not be available. Actually, that might be a case where mandamus might be available with the caveat that how would Marbury apply to that? Marbury says you cannot mandamus the president in a discretionary decision. And so baked into our jurisprudence from the dawn of this court is that there has to be some things the president does that you can't. Would you say that's not a discretionary decision? If the president says, I fire you for policy reasons, that that would be outside of his discretion and therefore subject to mandamus? Essentially, the argument has to be that'd be ministerial within the immediate Marbury. And then I think that standard in Marbury kind of gets ported into the standard in Cheney clear and a disputable right. Well, it would be clear and indisputable and therefore could run against the president in that case. Hypothetically, I'd have to do a lot more study. We're taking a firm position on that. Justice Kavanaugh? For present purposes, you accept the constitutionality of the four cause removal provision for the Federal Reserve. And that is what protects the independence of the Federal Reserve. What, in your view, is the purpose of that independence? It protects the government exactly reflecting the plain text of the statute. It protects the governors for removal for policy disagreement or for no reason at all. What is the broader purpose of that? To preserve the independence of the Federal Reserve. And what is the broader purpose of that? Well, there is a number of reasons that are discussed by the Aramiki and I think not disputed by us, which is that there is a, you know, a long tradition of having this exercise of monetary policy be exercised independent of, you know, executive influence. And we don't dispute that that's what Congress was doing in that statute. And again, we have not disputed the validity of the four cause removal restriction here. And why is that independence important in your view? For, I don't, we don't dispute the importance of that for many of the reasons that the Aramiki say, but we emphasize that there's a balance struck here. This is not a ironclad, you can never be removed. There is a cause removal. But on that, your position that there's no judicial review, no process required, no remedy available, very low bar for cause that the president alone determines, and that would weaken if not shatter the independence of the Federal Reserve that we just discussed. We disagree with that. And I would point to the point that, the point you made is a low bar for cause. In a sense, it's a very high bar. It's a very strong protection because it does protect them from the one thing that Congress was apparently most worried about, which is a removal for policy disagreement. But it would be in the view of the president, the president who might have a policy disagreement and there's no judicial review and the president can just define it on his or her own. One of the strongest traditions in this court's jurisprudence is the sort of presumption of regularity to the president's action that has applied to this provision, I think, effectively for 112 years and it continues to do so. Let's talk about the real world downstream effects of this. Because if this were set as a precedent, it seems to me, just thinking big picture, what goes around comes around, all the current president's appointees would likely be removed for cause on January 20th, 2029, if there's a democratic president, or January 20th, 2033. And then we're really at at will removal. So what are we doing here? What is, you know, we started, that's why I started with what's the purpose of the independence and the four clause removal. If we accept all these, no procedure, no judicial review, no remedy, you know, that's what's going to happen, I think. And then, then where are we? So do you dispute that that is, you know, the real world effect? I can't predict what future presidents may or may not do, but the argument strikes me as a policy argument. I mean, Hillary's a pretty good guide. Once these tools are unleashed, they are used by both sides, and usually more the second time around. And I think that's what, that's what we have to make sure we're, again, that can't drive the decision necessarily. We have to be aware of what we're doing and the consequences of your position for the structure of the government. Two points there. I dispute the characterization that these tools have been unleashed. The president has always had this tool to remove governors for financial improprieties. Now, the history is, including twice in the last four years, governors who have been credibly accused of financial improprieties have resigned. They haven't forced the president to remove them. And I think the more sort of fundamental point is that cause is a standard that is quite deferential to the president. Congress consciously adopted that instead of a more restrictive standard like INM. That was for, by all appearances, a legislative compromise between two camps, one of which wanted to give the president complete control. I agree with you that there's a balance here, and so I understand that. I'm not saying there's no interest on the other side here. I get that. But again, thinking about the real world and the brief of the former governors of the Federal Reserve, I mean, your position, again, because you say, well, the president can't say it's for policy reasons, which may be what's really, again, in not talking about the current situation and other situations in the future, what's really driving it. It incentivizes a president to come up with what, as the Federal Reserve former governors say, trivial or inconsequential or old allegations that are very difficult to disprove. It incentivizes kind of a search and destroy and find something and just put that on a piece of paper, no judicial review, no process, nothing, you're done. I mean, again, what are we doing when we have a system that incentivizes that and leads to that? Now, again, you can dispute that you think it's going to lead to that. And again, I'm not talking about the facts of this case. I'm thinking I don't know the facts of this case. I'm taking no position on that. This court has since Martin against Mott running all the way through Trump against the United States, Trump against Hawaii, a whole host of decisions. A court had consistently afforded the president the presumption of regularity in his action and consistently declined to probe a president's actions for their subjective motivations. And so in the hypothetical question that you posed, that hypothetical future president should also be afforded the very same sort of deference and... That leads, I mean, that brief, that amicus brief cites Justice Scalia's dissent in Morrison, which is always a good place to look for wisdom and the concern that you're putting all these resources because you can't say it's for policy. You put all these resources. Let's find something, anything about this person and then we're good. And by the way, there's no judicial review, so we're really good. And there's no administrative process. And again, I disagree with that. I think that that argument, that presumption, when it applied to the president, contradicts a very, very true, very strong strength in this court's jurisprudence. I go back to the founding. And what's the fear of more process here in the sense that process protects you in the sense of helping you make better, more accurate decisions? And it helps process helps you then convince people on the outside that you've made a considered, thorough, appropriate decision. What's the concern about more process? I don't think we think that process is necessarily bad. In this case, there's two reasons why, you know, process is not the right answer among others. One is in Vermont Yankee, this court said we're not going to dictate procedures to executive agencies. For sure, I should dictate procedures to the president. Our contention is that there already has been a process. There was a social media post that said, look, these two documents contradict each other. And the response was defiance. So there was a chance to tell in the words of a louder male to tell her side of the story and just wasn't, it wasn't adopted. And in fact, there hasn't been for months since then any clear explanation other than it was invert notation. It's just the kind of invert notation that ordinary people can be indicted for. And again, none of my questions or comments are about the facts of this case. I don't know the facts of this case, but thank you. Justice Barrett? I want to pick up on that question about why, and Justice Kavanaugh said, why are you afraid of a hearing or what would there be that would be wrong with process? I mean, you spent a lot of time litigating the case. You know, it's gone up from the district court to the court of appeals and now we're here. And if there isn't anything to fear from a hearing and if you have the evidence, why couldn't those resources have been put into a hearing? I understand you think that you don't have to provide one either because of the statute or because of the due process clause and that's fine. But in thinking about irreparable harm to the government, if one way, one step you could take to reduce your irreparable harm to show that there really was cause is just to have a hearing, why not? I don't think it's a question of resource allocation. It's our position that adequate process was already provided. So, it's a question of the district court's order has to go further and then go further and go further again, all without any legal or constitutional authority in our view. We think that imposes irreparable injury on the government. They told you to go farther, but not that much farther. I mean, okay, so there's the truth social post and then, you know, burden on her to come back in five days. I understand that's your position. But, you know, Justice Gorsuch posited sit down across the table in the Roosevelt Room where the president provides Ms. Cook, Governor Cook with the evidence and waits to hear what her response is, gives her a chance to defend herself. I mean, it just wouldn't be that big a deal, it seems, if that's enough. Again, it's an intrusion on the executive branch to dictate what procedures it ought to provide to the president. And our position is he has provided process. He's provided adequate process. If the district court said, well, that wasn't quite good enough, try again, and then we try again, the district court says, no, if that wasn't quite good enough, try again. We are gone left Vermont Yankee way in the rear view mirror. Do you concede that if the statute was an INM statute that under Shurtleff you would have to provide process? Notice and hearing, yes. Yes. We don't dispute that. And I want to go back to one of Justice Kagan's questions. She said, well, in Shurtleff, the statute itself didn't say that you got notice in a hearing for INM, but the court said that you did. Here, the statute does say cause. Cause isn't as specific maybe as INM, but it does identify the grounds that the president must have for removal. Why shouldn't we do the same thing that the Shurtleff court did and say that, well, as we said in Shurtleff, when a statute specifies the grounds for removal there must be notice in a hearing given? Because the case law, presumably Shurtleff, when it said that as INM, notice you get notice in a hearing, was relying on what we don't dispute as a, as far as I can tell, pretty consistent strain in the case law that that's what that means. It gives you specified causes like that INM gives you notice in a hearing. The case law on cause is the opposite. I mean, look at the lower court opinion in Reagan. In the court of claims opinion where they say cause does not mean you get a notice in a hearing, and we cite a strong line in the background case law as well. Now, they dispute, they say there's some cases going the other way. However, the notion that they are making an old soil argument. They're saying, oh, this, in order to prevail on that, it has to be so well settled and clearly established that there really wasn't a dispute about it. And you look at, I can't emphasize enough, you know, what, for example, the Tuttle Michigan Law Review article from 1905 that's heavily relied on, for example, in the Manners Amicus brief that they rely heavily on in their supplemental brief. It says the case law is all over the map on all of these issues. That, that treaty says the courts differ on almost every conceivable part of this question. The only point of consistency is that specified cause is I and M, which also, as we can see, is a holding of the court in shirtless, whereas cause just doesn't mean that. We cite all these cases that they dispute, and there's this battle about what did the 19th century case law mean. Keep in mind, in the context of that battle, they bear the burden of making the old soil argument. Justice Jackson? Just following up really quickly on that point, isn't, isn't the case law all over the map because the statutes were different? I mean, I understand the Manners brief, which they rely upon to really drill down on the various statutes related to removal and to have identified ones, for example, that have a fixed term but allowed removal only for cause, or had a fixed term and provided for removal at the president's discretion, or didn't have a fixed cause, a fixed term, et cetera, et cetera. There's like a series of permutations, and in those different circumstances, courts, which asterisk we're actually reviewing this so that in the first instance makes me question your view that courts couldn't review it, but setting that aside, we have a bunch of cases that come out different ways because the statutes are different. Professor Manning says, Manners says that when you drill down in this situation with respect to fixed term and removability for cause, as of 1913, it was well established, everybody agreed that that required at least notice and an opportunity to be heard. So what is your response to that? We're looking at a particular statute that does two things, fixes the term and has for cause, she says everybody said got to have a notice in a hearing. So why is the government saying different right now? Respectfully to her, that contention is plainly incorrect. So if you go to our supplemental brief, page 9, footnote 4 in the accompanying text, we cite Ulrich, and then 13 more cases in that footnote for the proposition that for cause does not require notice in a hearing. Her argument is geographic. I'm talking about the combination. Yes, the combination. Four cause and a fixed term. So when I look at those cases, I'm going to find that combination and people are all over the map, you say? By our count, in seven of those 14 cases, it's a combination. There's also a fixed term. So that argument just, again, that brief, you know, read the tunnel article that it relies so heavily on and you'll see this argument. They're nowhere near meeting the burden of an old soil argument. That's what they need to change the plain text of the statute. Let me talk about the plain text of the statute in light of its purposes. You explored with Justice Kavanaugh, and I appreciated this, that Congress put the four cause provision in there for a reason. And you conceded that the reason was to try to ensure the independence of the Federal Reserve. That we were, we Congress, Congress had decided that this particular agency, because of the sensitive information and policy determinations that it has to make, needs to not have the pressure of having all of its governors be fireable at the whim of the President, so in goes four cause removal for that purpose. And you agree. So I guess what I'm trying to understand is how does reading the statute to give the President broad discretion, which you've said many times with respect to his removability of these governors. How does that further the aims of the statute? It directly furthers the aim of protecting them for removal for policy disagreement, which would be the key protection. No, but you conceded that the aim is actually broader. The aim is to ensure that this institution is not being pressured by the executive branch, by the President, with respect to its determinations. That people can't just be fired because the President wants them to. And so what I'm now asking is if we read four cause to ultimately reduce to, the President can pick some fact that has nothing to do with their actual tenure in office, something that happened way before, and use that and say that's cause and it's not reviewable and he doesn't have to show any evidence and doesn't have to give the person a hearing. Basically the President is just making the determination that Congress apparently didn't want him to have the power to make because they put four cause in the statute. So how do you reconcile your vision of presidential discretion with a statute that was clearly designed to limit the President's discretion in this regard? It was designed to limit the President's discretion just as far as the plain text of the statute goes. The statute was a hard fought compromise between two influential and insistent camps as Justice Alito recently wrote. One of them thought there should be complete presidential control of the Federal Reserve. The other thought it should essentially be a private entity. They met in the middle with a removal standard that protects governors from removal. But it only protects them in so far as the President's determination about cause is reviewable and based on actual evidence that has been established. It doesn't protect them if the President can just make it up. It also provides a legislative determination that governors could be and perhaps should be removed if they engage in financial improprieties that undercut the Federal Reserve's credibility in the eyes of ordinary Americans. All right, one more question just about this idea of the district court's power. You've talked a lot about mandamus being the remedy, but as I read the cases in the law, mandamus was the remedy for courts of law that were being asked to reinstate removed officers. And this was back at a time in which courts of law and courts of equity were separate. We now have a fused system. Courts of equity could always be asked to step in and prevent the removal of this person. To the extent the person was claiming that they were not removable, say because the statute says they could only be removed for cause, a court of equity could be invited through this claim to come in and pause the circumstances, not allow this person to be removed until the courts of law had actually litigated the claim of removability. I think that's the world we're in. This was the very first question that Justice Sotomayor asked you. And so can you just explain why you're insisting that mandamus is the only thing available to the district court in this situation when this is an equitable decision in the interim in the way that I discussed? It is. The preliminary injunction is an equitable determination, and it's one that the district court plainly, under Sawyer, plainly lacked jurisdiction to enter. And again, I also, in addition to the holding of this court in Sawyer that a temporary restraining order purporting to restore a public officer and my question posits that we're not talking about restoration. We're talking about Ms. Cook's application to the court before she was terminated to prevent being terminated because her claim is that I'm not removable. That's an equitable determination. It's being made in the interim. She's not yet been removed because the court prevented that with its preliminary injunction. Courts of equity did that all the time. So I don't understand why you're saying it's inappropriate for that to be done now. Sawyer, in addition to that, as I alluded to before, there's this strong tradition of recognizing the president's authority to engage in suspensory removals pending that it's the final determination, and that alone would, is enough to point out that there's no power to do the preliminary injunction that was entered here. Thank you. Thank you, General. Mr. Clement? Mr. Chief Justice, and may it please the court, the Federal Reserve is a uniquely structured entity with a distinct historical tradition. Part of that historical tradition is an unbroken history going back to its founding in 1913 in which no president, from Woodrow Wilson to Joseph Biden, has ever even tried to remove a governor for cause. Despite the ever-present temptation for lower rates and easier money. Even in this case, the president recognizes the unique status of the Fed by neither arguing that the removal restriction is unconstitutional nor asserting the ability to remove a Fed governor without cause. But despite that recognition, the sum total of the Solicitor General's arguments would reduce the removal restriction in this unique institution to something that could only be recognized as at-will employment. No procedural due process before removal, no judicial review after removal, no preliminary injunction to preserve the status quo, and a conception of cause so capacious that apparent misconduct or gross negligence suffices. That makes no sense. There's no rational reason to go through all the trouble of creating this unique quasi-private entity that is exempt from everything from the appropriations process to the civil service laws just to give it a removal restriction that is as toothless as the president imagines. But if that removal restriction has real substantive and procedural bite, then this emergency application should be denied. There is simply no reason to abandon over 100 years of central bank independence on an emergency application on a preliminary record. I welcome the court's questions. But if there was such concern for independence, could the removal statute have been written as others have been written to require a hearing and review? So it could have been, Justice Thomas, you know, in the realm of interpreting statutes, could have, should have, would have, right? But I think that you have to give faithful interpretation to what Congress actually did. And I think if you understand the original public meaning of for cause in either 1913 or 1935, I do not think it was as capacious as my friends suggest. I think it probably meant INM plus ineligibility. And in the context of the Fed in particular, it probably picked up Section 244, which prevents a federal governor from also serving as a director and an officer of a bank. So if there were a Fed governor that insisted on being a director of Chase Manhattan, I think that would be removal for cause. And then on the context of the hearing, and I think Justice Kagan already alluded to this, but there are all these statutes about INM that don't mention a hearing. And there are many statutes that talk about cause and don't mention a hearing. Now, it's true that the NLRA, which was passed a month before, did specify a hearing. But I think it would be a mistaken statutory interpretation to make that one express reference to a hearing, sort of disable all the other old soil arguments with respect to all the other institutions, where I think there's a very strong old soil argument that whether it's INM or for cause, that means that you get notice and an opportunity. With that said, what would the hearing look like and what would the review look like? So I agree with General Sauer that the president would have a fair amount of discretion in how he or she wanted to fashion that hearing. I mean, one example we have historically is President Taft, and he sort of gave the removed officials the full Taft. And it was notice, opportunity for a hearing before an impartial tribunal that, you know, serendipitously included the future Justice Frankfurter. And then he, I mean, so that's kind of the maximum that the president could give. But we're not suggesting that you need to give the full Taft. The president would have a lot of flexibility on that. I think you asked what the review would look like, and I think that actually sort of gets to the heart of where the president's incentives would be. I think the more process that the president provides, the less room there's going to be for judicial review and judicial second-guessing of factual determinations. So if a president wants to give the full Taft, I think the scope for review of factual determinations by that kind of tribunal would be very narrow, but I do think there would be legal review. I'm not sure I understand exactly what you want a hearing for. If your argument is inadvertence, it doesn't seem to me that there's much you can say factually other than that. You can't say, well, this is why we did it, and this is okay, and all that. It's just an inadvertent mistake. Now, there obviously are a lot of legal questions to be addressed. But again, those are questions for the court, a court, and not the basis for a factual hearing. You don't have anything. You have one sentence to say. It was inadvertent mistake. Well, I mean, Mr. Chief Justice, I think in a case where the president's going to say that it's an inadvertent mistake is enough, and the potentially removed official's going to come in and say it was an inadvertent mistake, then you're right. I think the hearing's not going to matter that much. Now, in the real world where you have no precedent for this kind of removal, I think if there were notice and opportunity for a hearing, there might be an opportunity to not just present the factual evidence, but to also make the case. And given these particular facts about this particular inadvertent mistake, that isn't a basis for removal. Well, I think you're talking about the legal arguments, though, the arguments we're hearing today. I think that's right, Mr. Chief Justice. And I do think those could be made in a preliminary way in the process that was provided by the executive branch. But as I alluded to, I do think on the substantive question of what's for cause, there needs to be judicial review. And I think there needs to be judicial review of that question for all the reasons that were alluded to in the various colloquies. Because if there's no judicial review, then this is all kind of a joke. I mean, we can sit here and posit that, well, this would be for cause and that would be for cause, but none of it would matter because there'd be no judicial review. Well, on the question of what is for cause, what the district court held was that it must relate solely to in-office conduct. And you defend that with one caveat that if the officeholder is indicted later for, indicted while in office for pre-office conduct, then that might be cause for removal because a person under indictment wouldn't be able to devote full attention to the job. But other than that, you defend the district court's holding. Is that correct? We do defend the district court's holding on that. And I would understand that is the rule for all the statutes that have INM. There's nothing under a for cause removal standard. There is no pre-office conduct that could constitute cause. That is my frontline response. I happen to have a backup argument, which is if you pick up the common law, then you would pick up the common law. Well, let's take your frontline argument first and see how far you're willing to go. Suppose that the officeholder was permitted to resign from a previous job under a nondisclosure agreement based on long and egregious pattern of sexual misconduct. That would not be for cause. That would not be cause for removal. So what I would say, Justice Alito, is I don't think that would be INM. And so if I'm going to stick to my frontline position, then that would not be for cause. It would certainly be a basis for impeachment. And I think in understanding why we've had INM for at least 90 years.  I understand your position. How about if after the person assumes office, videos are disclosed in which the officeholder is expressing deep admiration for Hitler or for the Klan? I can only imagine where these psychos are going to eventually go. No, because your position. I'm going to stick with my position. Of course I'm going to stick with my position. And I'm going to say that's an official that would be impeached in a heartbeat. And the fact that they would be impeached in a heartbeat is going to cause them to resign in half a heartbeat. And this has not proven a problem. I mean, for better or for worse, whatever you think of Humphrey's executor, we've had 90 years of. What's your backup argument? My backup argument is the common law standard, just as Sotomayor alluded to it, which would be that it is that there's a removal basis for an infamous crime of the kind that is disabling for public office. And, you know, and a common law, it would, it also required a conviction. So it's an exception. It helps me with a couple of these hypothetical. It's not going to help me with Justice Alito saying there's no conviction for the Hitler video. Give a backup to the backup.  It's the ultimate backup here. This is not a situation where you're being asked, you know, have to tie yourself to the line. It's been argued in the past that impeachment doesn't cover private conduct. You obviously disagree with that, then? Well, I certainly, see, but this actually kind of makes the point about judicial review, right? I'm not saying I agree with that, by the way. It's been argued. Right. But, but, but what I, what I absolutely agree with is the Walter Nixon case says that there's no judicial review of the impeachment determination in the end. So whatever the House and the Senate ultimately determine, I mean, they can make constitutional law too, and they can determine whether private conduct is or is not out, and if they say, and, and with these hypos, I mean, you know, we can, we can go down the road of the hypos, and we'll get worse. I, I, I am a, I'm a confident. The backup, to use Justice Gorsuch's term, would be the infamous, but you don't need a conviction. Right. No, absolutely. And of course. And that seems to solve your answer, a lot of the difficult hypos, correct? Correct. But the reason I want to spend at least a moment answering some of the hard hypos is not because I'm a masochist. It's just because those are, got to be the answers under INM. You, your answer is that those are funneled to the impeachment process. That's right. And that's, that's the way INM has worked for 150 years, and I think it would continue to work. It hasn't proven a problem in practice, but I'm not resisting very hard the backup to the backup on that, because I don't think we're close. And of course, look, all of these are hard questions, which is all of the reasons why it's kind of crazy to decide this on an emergency application. Yes, well, there are a million hard questions in this case, and it is an emergency application, and very difficult questions. Either no precedent or very conflicting, or very uncertain body of precedent. But there are two things were decided by the lower courts. One, that what I just explored. The district court said, it's got to be in-office conduct, nothing that happened before a person took office counts. And then the D.C. Circuit said that your client had a property interest in her, in her office. And therefore, a due process right. Is that right? She had a property interest in being a governor on the Federal Reserve Board? So I think there's a perfectly reasonable argument for that. But I also think that there's a better argument that's a constitutional avoidance argument. And what the D.C. Circuit did in a per curiam opinion is sort of an example of what happens when you're trying to rush all of this, which is you jump right to a constitutional holding when there may be a perfectly good constitutional avoidance statutory holding there. And I think we've now had a couple of months and a bunch of amicus briefs to ventilate some of these things. And I think you get with that ventilation, you get an understanding that there is a very good statutory argument. And I do want to talk about. Why wouldn't that be a basis for sending it back to consider these arguments in the first instance, if you aren't prepared to defend the due process argument and perhaps your frontline argument on the things that happened before employment are categorically and always off the table? If those two decisions, which to be fair were of course issued under a time constraint, might have some flaws, why shouldn't it go back to reconsider it? You've advanced a lot of new arguments here. So have your friends on the other side. So it should go back. It should just not go back with an emergency stay being granted, which is an extraordinary relief that depends on my friends on the other side showing extraordinary burden of irreparable harm and showing that they have a likelihood of success on the merits. And I think likelihood of success in the merits in this context doesn't mean just a likelihood of showing that the two grounds that were seized on in the quick briefing below are wrong, but that they're actually right. And I think the briefing here has done two things. I think it showed that we're right. I'm not abandoning my frontline arguments, but I love my backup arguments. I think they are very strong. And I think it shows the sort of, you know, the problems that happen when you try to decide some of the most important issues of constitutional law in this kind of rushed way. Can I ask you about the mandamus question? Why isn't mandamus the appropriate avenue here? It is an appropriate avenue at the end of the case. Even at the end of the case though, I think, and this is consistent with what Professor Bray says in his article. Even at the end of the case, I don't think you have to leap to mandamus. I think you can have a declaratory judgment. Well, let's put the declaratory judgment issue aside because we can talk about mandamus for a second. Assuming there is such thing as a preliminary injunctive relief for mandamus, which I'm going to ask you if that's a thing, first of all. And second, if it were, wouldn't the standard you'd have to show likelihood of success be the likelihood of success under the mandamus standard? So, a couple of things. I mean, I don't like hearing preliminary mandamus any more than Judge Friendly did. No. I don't think it's the right way to think about it. I think it's preliminary relief to preserve the status quo, or if you want to be more specific, preliminary relief to preserve a de facto officer in their office while the case proceeds. And that is a relief. Well, why isn't it preliminary injunction or mandamus? I know what those two buckets are. I'm not sure I'm familiar with the third one you're describing. What I'm describing is a preliminary injunction. I'm just saying it's not a preliminary mandamus. Well, wouldn't it have to be, though, if your cause of action were mandamus, and let's just suppose that's what it is, it would be preliminary injunctive relief because you have likelihood of succeeding under the mandamus standard, I would have thought. Well, perhaps. I mean, two things about that. One is I'm not sure in this kind of mandamus posture, I don't think I agree with General Sauer that the standard is the standard you would have in like a Cheney situation. I do think this kind of original mandamus as the remedy in this particular situation, I would resist the idea that that's sort of the standard, more appellate mandamus standard. That's a debate, even with all the briefing we've had, we haven't had a good chance to really duke it out on that. But I would say that's part of the reason I resisted the idea that you have to go to mandamus because I do think you would have declaratory judgment. I do think declaratory judgment. I ask you to put that aside for the moment. No, and I tried to, as long as I could. All right. But then to answer your question, I really had to get to declaratory judgment. I would like to say this is an issue the D.C. Circuit has thought a lot about, and there's a particular case worth reading, the Swan against Clinton case, and that's a case where they kind of wrestled with this question about can you, you know, do you have mandamus against the president at the end of the day? Can you direct the president? And there's a great concurring opinion by Judge Silverman where he basically says, look, the judiciary is creative and clever enough to figure out a way to fashion injunctive relief against the lower federal officials, and that solves the problem about having the relief run against the president. And the reason that the D.C. Circuit has wrestled with that in a couple of contexts, and I think the Chief Justice alluded to this, they were really right about that. Then you'd have to wrestle with this at the beginning of the case as to whether there's any redressability at the end of the case. And in the Swan case and even in the Severino case, the D.C. Circuit has said there's not a redressability problem. We can figure out a way to direct the relief at the lower government officials, and that will be sufficient under the day. And that happens at the end of the case, right, after the whole thing has been litigated, and some court, perhaps even this court, decides the removability question. The president does not, we would say, have the right to remove her, and then we go to remedy, and the question is, is there a mandamus or not? The reason why I thought mandamus wasn't on the table right now is because we're not there. We're in the middle of the case. We haven't, no one has made a definitive determination about the president's right to remove her. The question now is just in the interim, while that issue is being litigated, what happens? And that's about the equities, that's about whether it's going to be more harmful to leave her in the position than not. That's what I thought this motion was about. I mean, I think that's right, but it's specifically about whether you can get some sort of preliminary injunctive relief to preserve the status quo and keep the de facto officer in place, and I do take Justice Gorsuch's question, which is at the end of the rainbow, all there is is mandamus, and you can't have mandamus against the president. Then at this point, you'd say, what's your likelihood of success at the merits? And you would say, there's no likelihood of success in the merits. But I think, as I alluded to, even before that, you'd say, is there any redressability here? Wait, I'm sorry, why would that be a merits issue? You'd have no likelihood of success on the merits, you'd just have no remedy. You would win on the merits, the merits are that the president wasn't supposed to remove you. But you would lose because there's nothing to lose ultimately in terms of not having a remedy, right? Well, I mean, you could draw the distinction that way. I think if you have no remedy at the end, you probably have the redressability problem at the front end, which is why the D.C. Circuit has addressed this on a number of bases. These are not emergency application decisions. These are decisions of the D.C. Circuit. They obviously don't bind this court, but they are the considered judgment of a court that's dealt with, you know, like about with all the removals there have been, and there haven't been a lot of them, but with respect to other officers. So, you know, I think that's pretty good authority. What would judicial review in this context look like? I mean, this is not a question about what the standard is. It's more a question about is there a kind of deference to give to the president? How does that deference operate, whatever the standard is? Sure. So I would divide between sort of factual questions and legal questions. As to the factual questions, I would say that there's going to be a degree of deference, and the degree of deference depends on the degree of process that's provided. So if the president wants to go full taft, I don't think the courts are going to be in a position to second guess the factual determinations. If the president wants to do something more informal, that's, he's entitled to do that, but then I would think there'd be more of a scope for, you know, having more hearing, more process in the judicial forum. On the question, the legal question, I would say in a post-Loper world, there's no deference to the legal questions, and the courts are going to have to decide, ultimately, what are the boundaries, the meets and bounds of for cause. And the only other thing I would add is I think that you're going to want to erect meaningful standards of cause because, you know, there's kind of two options here. You can either have judicial review that spends a lot of time looking into pretext of the president, and that just doesn't seem like a good thing for the courts, for the president, or anybody. Or you could erect relatively demanding standards of cause, and that's going to, I think, obviate the need for that kind of pretext inquiry. Yes, so General Sauer's version of cause, which is, it's not policy. It's something other than policy. Why isn't that the backup to the backup to the backup? Well, because it would kind of destroy the whole point of having an independent central bank in the Fed, and it just seems to me like at some point, I mean, we're all here on the assumption for this case that the Fed is a uniquely structured institution with a distinct historical tradition. And so if that's true, and then you tick through the statute, and you see all the things that Congress did, I mean, including, you know, Congress wasn't just trying to take the Fed and keep it from sort of being unduly influenced by the president when it came to rates right before an election. It did the same thing to itself by limiting the power of the purse over this institution. And then you go through, and, you know, just every provision of the statute is trying to treat this unique institution differently. And then at the end, you have four cause, which, I mean, could mean what General Sauer says, but if it means what General Sauer says, then the whole enterprise was a lot of trouble for nothing. On the future judicial review, and what that looks like, would the witnesses testify in court, or is it done on the record established by the executive branch, or does that maybe depend? I would say it depends on what kind of process was provided by the executive. And look, I agree with General Sauer. This court's not going to dictate, like, you know, here's Robert's rules, you know, have at it. But I think this court can do something useful, which is essentially to create an incentive for the executive to provide something that's a little bit more protective, a little bit closer to task, than something incredibly informal. That sliding scale is extraordinarily unhelpful. What is the minimum that the executive, in your view, has to provide? The minimum type of hearing that you think is required by the statute? So the minimum hearing, I think, would have three components. One is notice, and that's really not much of an issue here. I agree with that. The second is an opportunity to provide evidence to the decision maker. And we don't think that happened here. And then the third thing is some effort to keep the final decision maker from prejudging the issue. And part of the problem you have in this particular case is that I think the President was proceeding on the understanding of the statute that's faithfully represented here by the Solicitor General, which is he wasn't acting like a removing authority that was subject to any due process. Because if I think he were, if he were sort of subject to that, he wouldn't have said in his opening tweet, you must resign. And he wouldn't have said two days later, resign or be fired. So does that mean it has to be a body of disinterested decision makers? No. People who are not part of the executive branch and can exercise independent judgment that way, no? No. And what does it require? It requires just what I said. Notice, an opportunity to provide evidence, and a decision maker who hasn't prejudged the issue. That decision maker can be the President. I mean, I'm not sure I'd, you know, necessarily recommend it as my choice A. But how can it not be the President? The statute authorizes the President to make the removal decision. How could it be anybody else? Well, look, I mean, you know, if you believe in the unitary executive theory, then anybody that makes the removal decision is acting on the President's power. I think it would work, you know, I think the way it worked for Taft is the tribunal made a recommendation, then Taft executed it. Right. So it was the President making the decision. The President has to make the decision, right? Or delegated to somebody who he wishes to make that decision, who's reportable to him. Yes. Yes. OK. At will. At will. Yeah. Right. Absolutely. I mean, so and the President can be the final decision maker. But if he's going to be the final decision maker and there's a due process, right. And I mean, I mean, that's statutory or constitutional. Then, you know, he needs to be a little bit careful and say, these are the allegations. He can't start by prejudging the issue by saying resign. Mr. Clement, your understanding of for cause, you know, you went through hypotheticals with Justice Alito about how it doesn't cover pre office conduct. What about conduct in office that doesn't relate to the discharge of the office? Like what if you take some of Justice Alito's examples, but it's like Nazi videos while the governor is in office or, you know, things that would be misdemeanors rather than infamous crimes like shoplifting, stealing things, domestic abuse. Would those things be classifying or that's they don't really seem like impeachable offenses necessarily. So I don't think those would be removable offenses under INM. OK. And so I don't think they would be removable offenses under for cause properly construed. So there's nothing that the president can do to get rid of someone who does those kinds of things while in office. So, I mean, you know, some of the things we're talking about, you know, seem like better grounds for like an intervention than for removal. And I mean, I could come up with others, but I mean, absolutely. Absolutely. People. Sorry. You know, I'm I'm going to fall back on my answer, which is that's my understanding. And I think it's actually everybody's understanding of how INM works. But it doesn't say INM. And so, I mean, I I appreciate your argument that INM and for cause are one in the same, but you also kind of pull in and your fall back some sort of like gerrymandered things like infamous crimes, but you don't have to have a conviction. I mean, so it doesn't say INM. So a couple of things. One is, you know, I'd resist. I mean, you know, gerrymandering is generally not a compliment. So I would sort of say that what we do is we bring in the common law. And that's what we do. And I really didn't try to gerrymander it beyond that. But and but let me make the argument, which I really just ask one clarifying question about the common law of the required conviction. It did. And and that would be our our sort of frontline backup, if you will. I mean, but but but the happy thing for me, I think, is at this stage of the case, we win under all these variations and ultimately, you know, some court and it may be this court is going to ultimately say these are the meets and bounds of for cause. Now, I think I have some pretty good arguments that it really is just INM plus ineligibility as kind of informed by Section 244. And let me just give you like my best shot at it, which is this is the very unusual situation where, you know, we know that Congress was literally waiting for this court's Humphrey's executor decision and then it gets Humphrey's executor's decision. And this court and Humphrey's executor at least three times uses for cause and INM interchangeably. And then the senators themselves in the debate, I got to look at debate. But I think even Justice Scalia looks at debates for original public meaning. The senators in the debate use the terms absolutely interchangeably. And so you have two of the three branches of government, original public meaning saying for cause, different words. But what it means is INM. But I do think it must you know, you got to make sense of Section 244 of the statute, which does provide a very specific eligibility requirement. And as I said before, I think if some Fed governor was insisting that they also wanted to be a director at Chase National, they could be removed for cause for that. Do you think that there's a way at this posture of dealing with this case so that we don't have to confront the question of exactly what the for cause standard means? Is there a way to deal with it at this stage without having to ultimately say that? I mean, sure, there'd be a lot of different ways to do that. You could say that for cause. I mean, you know, one way to come at it would be to say at a minimum for cause doesn't mean apparent misconduct or gross negligence. And I think that would be sufficient to decide the case, at least at this juncture. And I think you could say something more. I mean, you know, obviously, if you took my position and said it means INM plus ineligibility is informed by Section 244. I don't I think we'd be done here because I don't think there's an argument, at least that I've heard at this juncture, that the conduct that's at issue here is either INM or ineligibility. Couldn't we also resolve it by not even going to the likelihood of success on the merits element? I mean, you have the president would have to have all of them to get a stay and we could do it on harm, right? Sure. I mean, you know, I looked at an emergency application. You could deny it without opinion. I mean, that would be a little strange at this juncture. But, you know, it is it is an extraordinary application made on a preliminary record. And so, you know, you sort of have a lot of optionality at this point. But but I will say this. I mean, you know, I do think the briefing in this in this in this court, which was, you know, sort of unusual, you had the application briefing, then you had a meekie, then you had this supplemental briefing. I think it's been incredibly helpful in excavating some of these difficult questions. I mean, you know, I've looked at almost all of these common law cases. I have a different view than General Souter on Sauer, sorry, on on some of these questions. And, you know, in particular, I think it's very important. And, you know, I want to get this out that if you look at Shurtleff, one of the things that Shurtleff there's that there's a there's a line there that says that we're where Justice Peckham is invoking the common law. And he says that as long as there are certain causes, statutory restriction for certain causes, that's the term he uses. Then there's notice in a hearing. He said seven common law cases. Now, if you look at those common law cases, three of the seven just say four calls. And two of them say good behavior, which is even less. And then two of them have a more specific cause. So that's to me the best contemporaneous evidence that we're actually right about the issue, that if it just says four calls and it doesn't say for a particular kind of cause, you get notice and an opportunity for hearing. But that's the kind of thing you can excavate on full briefing on the merits that I don't think you can in an application. Thank you, counsel. I guess I get back to where I kind of started and all this description. These are all sorts of legal issues. You don't have anything more to say on the facts, right? It was an inadvertent mistake. I don't see how you can say anything more. And we've had a broad range of discussion on the legal issues. Now, it's very helpful for us to have lower court decisions on those and maybe that's reason enough. But again, I guess I don't quite understand what sending it back would be for other than airing of the same sort of issues that we've been airing this morning. Well, I'm not going to resist too hard you deciding this on a more substantive ground that gives my client sort of, you know, relief that's more enduring at this stage. But I will say that, you know, another one of these like great common law cases is the street commissioners of Hagerstown, which happens to be the case that Black's Law uses for its definition of cause. And one of the things it specifically says there is like even if you don't think the due process, the notice and the hearing is going to amount to much, it's still an error not to give it and we're still going to essentially not allow this removal to happen because there wasn't notice and an opportunity for a hearing. So it may not be an error to go through the process of your client coming in and say it was an inadvertent mistake since it was inadvertent. I don't have much more to add to that. And this argument on the other side being what the president said, well I think this is a serious enough mistake and so that's why I'm removing her. Again, there's only so much I can say to resist the idea that, I mean, you know, we think this was at most an inadvertent mistake. We would have liked a more, you know, sort of opportunity to do that and present our actual evidence which would have substantiated that. But we also think at the end of the day, inadvertent mistake isn't like very close to forecaused particularly when you understand the unique nature of this institution. What is your actual evidence that would substantiate the fact that it was an inadvertent mistake? I think the fact that there's an attachment to one of the applications that describes it as a vacation home. And that's not... We've got that too. No, I understand but the president didn't. And it seems to me that, you know, you know, usually when there's a procedural omission, one doesn't say, well, you know, at this point we got everything we need so forget the procedural omission. I mean, again, I'm not really going to resist that especially if you're going to, you know, say you're with me on the substance. But, you know, it does seem to me, you know, if you want to reserve judgment on the substance or you want more briefing on the substance, you could say and this is, you know, that whether it was constitutional due process or statutory due process, I think this is the gist of the DC Circuit's decision is like at a minimum you didn't get the process you were supposed to so the government doesn't get this extraordinary emergency stay. Justice Thomas? Just so I'm clear, for you to prevail, we would have to say cause is the equivalent of INM. No, I don't think so, Justice Thomas. I think you could really take any definition of cause that we've been sort of batting about with the exception of General Sowers' definition and we would prevail. I think the only and I do think the definition that's presented to you by the President is a pretty extraordinary one because, you know, General Sowers is a very careful lawyer. So in his briefs, he doesn't talk about mortgage fraud, he talks about apparent mortgage fraud. And when you're talking about apparent misconduct as opposed to actually found misconduct, that A, doesn't get forecaused and B, it sort of is advertisement that you have a process failure. And so the fallback then is or gross negligence. So one way to think about this is if the standard of forecaused is more demanding than gross negligence, then we certainly win. And we didn't even get a chance to sort of argue about gross negligence. What is your, if it's not the equivalent of INM, what is, what are some of the other standards that you would apply that would be sufficient for you to prevail? So I think the single best reading of the statute is INM plus ineligibility as informed by Section 244 of the statute. I think then my fallback would be then you pick up the common law and if the common law makes you uncomfortable because of Justice Alito's hypos, you could tweak the common law. But you would then be tweaking the common law. And I, you know, that's why honestly at the end of the day, although it's uncomfortable for a few moments to answer some of those hypos, you always have impeachment as the backstop. And we had, what was it, 90 years plus if you go back to the Interstate Commerce Commission in 1887, almost 150 years with INM. And this didn't really pose a problem in practice. Justice Alito, do you think that we should decide this case on the factual ground that what is shown by the materials that are before us shows nothing more than gross negligence, which is insufficient? Should we make that factual finding in the first instance? I understood your answer to be, you should do that if you're going to find in favor of me, but you shouldn't do it if you're going to find the other way. I'll stand by that answer. Really? That's your answer? I think it would be a little irregular. But this whole case is irregular. And if that seems to be the path of least resistance to decide this case in a way that is going to essentially obviate the need for this court to decide it again in a couple of years, that seems like a perfectly reasonable way to decide the case. Thank you. Justice O'Meara? This whole case is irregular, starting with the truth social notice or thinking of it as notice at all. Certainly didn't invite an opportunity to be heard. But that's where we are. Now the question becomes, and you answered the Chief and said, I don't have more to present. I don't know where you presented anything. You have a letter from you that basically says that the application included notice that this was a vacation home, but that's never been given to the President. That's never been filed with a court, or no one's ever seen it. It's just statements being made. So I don't know why a factual hearing would be irrelevant. So assume, as I do for the purposes, that she did fully disclose this was a vacation home. So now the question is, is this what she did negligence or gross negligence? Does cause include just mere negligence? I think that you have a very strong argument under any reading of cause that mere negligence pre-office would not qualify, correct? Correct. Alright. Because it would seem extreme to think that something separated from the functioning of the office, unrelated to the work of the office at the time it's done, that mere negligence would be enough. But the President called it gross negligence. Who decides that issue? So I would think that ultimately that's a mixed question of law and fact that would be ultimately decided by the court on judicial review, assuming you're with me that there's judicial review. I do think there would be a logically anterior, purely legal question of whether gross negligence is sufficient for cause. And just as I think I have a pretty good argument that negligence pre-office is not a sufficient basis for cause, I think I have a pretty good argument that gross negligence pre-office is not a sufficient basis for cause. And, you know, in some respects, I think in the long run it will be better to make clear that in the context of this unique institution with this distinct history that for cause is several steps north of gross negligence even. Because that's going to make it really something that the courts aren't going to have to get dragged into on a routine basis. Where I think the lower the standard is, the more likely you are to have removals in the future, and the lower the standard, I think the greater is going to be the judicial temptation to think about pretext. And I'm not going to say that there's no role for a pretext inquiry, but it's not a happy sort of scenario for the courts to be considering pretext in the context of presidential decision making. And it seems to me the way to solve that is to say the real procedural and substantive kind of bite to this term sort of for cause. You do have to do some kind of notice and opportunity for a hearing. I mean, even if it's an hour in the oval, that's a big imposition on the president's time, and that's going to keep some presidents from removing somebody. And if they know that it's going to be judicially reviewed, then that's going to deter most presidents most of the time. And so I think kind of, you know, like what is it? You know, high walls make for good neighbors. I mean, I think this is a situation where you do want to have this kind of meaningful legal requirements. This is Kagan. Do you understand the government's demean by gross negligence? This? I mean, you know, I don't really know. I don't think they've offered sort of a theory of gross negligence, and that's why I don't think it's... Do you think it's just a label that they put on this particular set of facts? Sure. And if heaven forfend, we end up with a whole common law of Fed governor removal, then we might eventually be able to sort of piece it together. But it seems to me that, you know, you could label an awful lot of things gross negligence, and that seems to be inconsistent with not just the forecast provision, but the whole structure of the statute. And, I mean, Justice Kavanaugh alluded to the Morrison dissent, and, you know, Justice Scalia creating this beautiful picture of some independent counsel with nothing to do but to find a crime on somebody. But if all the independent counsel has to do is find gross negligence, then I don't think the independent counsel would need more than a couple of hours with most of us. I mean, that's such an elastic standard. And I just can't imagine that's consistent with all the trouble Congress went to to make this unique entity insulated from kind of the political pressures of the day. Thank you. Justice Gorsuch? Justice Kavanaugh? A couple of things. Just to talk again about the standard. I mean, getting the definition of forecalls right, which we may not have to do in this posture, so I take that as critical, because on the one hand, you have the independence of the Federal Reserve, which we've talked about. On the other hand, we have people committed, again, not talking about the facts of this case, but serious ethical or other wrongdoing, digging in and remaining in office. And it seems like your two answers to that, when you said your frontline positions, I and M, were intervention slash resignation, and I'm not sure that really works with some people who are going to just dig in, you know, they're not going to leave. And then the other was impeachment, but of course, with the two-thirds requirement in the Senate and the time constraints of the House and Senate, I'm not sure that's available as often as you say, all of which is getting me to the point of I don't see how the frontline position really can be the final position without making, kind of tilting the balance here too far the other direction from where the Solicitor General is. You just want to tackle that at all? I mean, you've covered it, but I want to get it out one more time so you can succinctly answer it. Sure. I think the best thing that I haven't said already that I could add is I think in the unique context of this particular agency, you want to strike the balance more in favor of keeping an official who may be in a perfect world would be removed because, you know, this is the opposite of the situation in essentially all of the other situations with the possible exception of like the tax court and the court of claim and the court of military appeals. Here, I think, you know, it's less important that the president have full faith in every single governor and it's more important that the markets and the public have faith in the independence of the Fed from the president and from Congress. And in this regard, I think it's, you know, this is not a situation where the, unlike Myers, which is the ultimate example, where the president is trying to irrigate some power away from the executive. This is a situation where Congress, political animals, one and all, knew better than anyone that the short-term temptations to lower interest rates and have easy money was a disaster in the long term but was going to be irresistible. And so they tied their own hands by taking the Fed out of the appropriations process and they tied the president's hand. And I think they tied the president's hand in a pretty significant way and I understand the concerns about the balance but I would say in this one context, it probably makes more sense to, you know, and maybe you want to, you know, bring in a little bit of common law and that's fine with me but I do think you want to strike the balance so that the ultimate imperative is that the markets don't think that rates are being lowered for political pressure. When rates are lowered, the markets are going to understand that that's actually prudent financial management of our monetary policy. In your colloquy with the Chief Justice about what a hearing would look like within the executive branch with the president or with the president's designee, I just want to make sure I have this clear. In that hearing, you could make legal arguments as well, I assume, not just factual arguments but legal arguments to say we don't think this rises to the level for cause. Basically, the kinds of arguments that you've made here, you could make to the president in the same way in an impeachment proceeding, people make legal arguments to the Senate about what exactly is high crimes and misdemeanors, correct? Correct. And obviously, the nature of the hearing is going to inform the scope for that. If it's, you know, just half an hour with the president, I don't know how much you're going to get into sort of legal briefing. But if you did do anything like taft or you just say, well, we got a couple of ALJs lying around, we'll have one of them to sort of hear the evidence on this. I mean, then I would expect there to be presentation on both evidence and law. And just for the kind of simplest way, as Justice Kagan was asking, to decide this case, I think one way would just be say there was insufficient process and therefore, we at this juncture deny the government's application. Thoughts? I think that would be a very simple way to decide this case. I think perhaps the defect that was alluded to in the colloquy with the Chief Justice is that probably is also, you know, the way that probably maximizes the chances that it gets back here on the merits, whereas if you decided to go a little further and say something substantive, it might bring all of this to an end. And there's probably some virtue to that. Certainly, there's some virtue to that from my client's perspective. Thank you. Justice Barrett? I'm going to ask you about irreparable harm. You were just talking to Justice Kavanaugh about the uniqueness of the Fed and its need for independence, and the government, because it has not challenged the removal restriction, for purposes of this case, I think we're all operating on that assumption. When the president, if you're thinking about the unitary executive, when the president has untrammeled authority to fire a subordinate, keeping that subordinate in office, I think inflicts maybe a different kind of irreparable harm than the argument that the government would be able to make here, because the president doesn't have the same control over the Fed, at least based on the assumptions we have in this case. What do you think about that? And what kind of an argument would you make for, what is your best case argument that the president is not suffering irreparable harm by the inability, let's assume that he has the ability to remove Governor Cook, let's assume that some of your merits arguments are going to lose, they still have to show irreparable harm. So, what's your best argument that he's suffering none? Well, I think my best argument that he's not suffering irreparable harm in those circumstances is that he's not suffering the unique indignity of having sort of pure executive power exercised by people that are removable at will outside of his control. And maybe that's a little circular in the end, but I think it's kind of why this case is, I think, problematic for the government. Because, you know, they could have come in here and said, you know, Fed Schmidt, it's not that different. This is just like the FTC, and so we're suffering the same irreparable injury as in those other cases. But when they come in and say, no, we're going to accept that the Fed is different, at least for purposes of this case, and that we can't remove somebody just for policy disagreements, then having somebody continually in office just because you have a different conception of forecause than they do or than you've been able to persuade a court so far about doesn't strike me as irreparable harm. And then on the other side of the ledger, I think there are enormous irreparable harms here that really don't have an analog in most of these other situations. I don't mean to denigrate any other agency, but, you know, there's a reason that monetary policy has been treated differently for, you know, low these many years, and there's a reason that the markets watch the Fed a little more closely than they watch really any other agency of government. Justice Jackson? So you've had a couple questions about what good is a hearing? What would a hearing do in the situation where Ms. Cook has made a statement through her lawyer about the allegations? I guess I'm wondering, setting aside for a moment the standards for cause, don't we have to have a circumstance in this kind of situation in which the facts are established? In other words, I thought the work of the hearing, even in this situation, would be to establish when these applications were signed, what she thought she was attesting to, what actually was going on with respect to these documents that the President is pointing to that says, and he says they establish her deceit and gross negligence or whatnot. And I think before we even get there, we have to know what the facts are related to this. Isn't that what the hearing would be about, at least in part? I think it would be, and maybe though to try to defend my heads I win, tails you lose answer to Justice Alito. I mean, you know, you could think about this by analogy. I mean, there's certain circumstances where you essentially grant a motion to dismiss for one side. You basically say, look, we didn't have a hearing here. That was a mistake. But even on sort of the best reading of the evidence, this is at most an inadvertent mistake. And so there is no for cause removal, in which case my client would win. On the other hand, if, you know, normally you have that kind of evidentiary hearing, and that is to establish sort of the facts, and then you then apply the law to those facts that have been established. But there are circumstances where you don't need any more facts. But then you're in Justice Kavanaugh's world, which is you would still at the hearing then go to the legal question of whether or not what you agree happened here counts as gross negligence. You would say it has to be at least that in order to satisfy the for cause standard. The other side would say no. So there's something, there's some work to be done in a hearing. Absolutely. And what I, another way of putting it is, look, the denial of the hearing to my client if she does indeed have a right to a hearing cannot be harmless error. Like it just can't, no matter what you think of the facts. On the other hand, if you agree with us on the law, you could still resolve this case in her favor on the grounds that, you know, there were two mistakes here. One, she didn't get a hearing, but we don't have to like remand for a hearing or any of the rest because even on the facts kind of most, you know, in the light most favorable to the government, this isn't a removable offense. Can I go quickly to the standards? Because as I read the sort of what happened here, it wasn't as though the district court just sort of made it up in terms of what she thought should count as for cause. My understanding is that she was looking, as you've said several times, to the common law and what courts have traditionally said. And I see, for example, a court, a Maryland court, Board of State Commissioners of Hagerstown in 1903, which is around the same time as the establishment of the statute, that said, quote, the phrase for cause must mean some cause affecting the ability or fitness of the incumbent to perform the duty imposed upon him. And other similar courts at the time talked about pre-tenure conduct and said if it was pre-tenure, it can't be sufficient cause unless it was serious enough to undermine the job performance. A mere allegation was not enough back at common law. It had to have been tested and proven like through a conviction. So these standards that were used here to determine, at least at the district court level, whether cause was satisfied came from somewhere. Is that right? Absolutely. And, you know, I love that Hagerstown case because not only is it a very helpful common law case, but it's actually the basis for the definition in Black's Law that the government and Judge Katsis below relied on. I mean, you know, Black's Law is an unusual dictionary. It just doesn't sort of, you know, pop out the meaning from like Noah Webster's mind. It like cites cases for particular concepts. And the concept, the case it cites for poor cause is that Hagerstown case. And so all the hypotheticals, I mean, we see them and they might be problematic, but they would be tested against the standards that the courts have applied, right? Absolutely. And if I could just elaborate in one respect, I mean, you know, if you think about pre-office conduct, there's only two kinds. One, there is pre-office conduct that was disclosed to the Senate in the confirmation process. And as to that, even the government sort of says, well, you probably shouldn't let the next president sort of re-litigate all of that. And then the second kind is stuff that was undisclosed. And if it's as serious as we're talking about, that's essentially the nominee, you know, defrauding the Senate. And so I actually think in that respect, impeachment is probably a more fit remedy than it might be in some other circumstance because you're going to have whatever the conduct is, plus you're going to have the Senate being pretty darn vexed that that was withheld from them in the confirmation process. I guess my question, do you, I took you to be conceding that there was notice here. And I guess I'm a little concerned about that. I mean, are you conceding that a posting on social media is sufficient notice in a situation like this when the president is seeking to remove a governor for cause? So what I would say is, you know, I think. I mean, I know it happened. She got notice. We live in a world that is connected. But I guess isn't notice a particular thing in the common law? Well, I mean, I don't sort of resist the idea that the truth social post is notice because I think it's also fundamentally defective notice because it's also indisputable evidence that the president prejudged the matter. It's not the kind of notice. So hypothesize he didn't say you are fired or you should be fired. Hypothesize he just said, you know, I have this information and I intend to fire the governor. Why wouldn't he have to like send the letter to her? How is it that we can assume that she's on social media or has looked at the news or that that's sufficient notice even if she did turn on the news and he's saying that? I don't know why that would be enough. Look, I might make that argument, but that doesn't seem, you know, I mean, if he if he said on truth social that, look here, I have this allegation and I'm going to convene a hearing at the Roosevelt Room at 4 p.m. tomorrow. Please bring all your evidence. What if she doesn't have a true social account? She doesn't show up. Is that enough notice? You know, I think under those circumstances, probably not. But I think it's a practical matter. In most circumstances, the president puts it on true social. Most people, most of the time are going to consider that to be noticed again. The part of the reason I'm not resisting is or I'm sort of moderating this is because, you know, this notice isn't the kind of notice the common law envisioned, because the common law would envision notice that didn't prejudge the matter. Thank you. Thank you, counsel. Rebuttal General Sauer. Thank you, Mr. Chief Justice. Turn to the question of whether or not in office or pre-office misconduct can constitute cause. I want to make a statutory point, which is that the INM standard is by on its terms limited to in-office misconduct. And Congress did not adopt that here. They adopted the more capacious standards. This court recognized in Collins against Yellen cause gives the president more discretion, provides less protection to the to the officer than the INM standard does. And even if we were in a situation where you're looking at the the 19th century case law and so forth, they disregard a series of cases that hold that pre-office misconduct is sufficient cause. For example, in Ray Gooden, which is from New York in 1902, which involved an officer who engaged in a kind of shenanigan in order to get the office in the first place. There was a corrupt agreement to appoint somebody to a position if they supported that person politically. Iowa against Walsh, which was pre-office embezzlement. Gill against Watertown, a case they rely heavily on. It was said in dicta, at least, that gross frauds committed before office would constitute cause to remove. So there really isn't support anywhere for this notion that pre-office misconduct can't be considered when it when it comes to a cause standard. And related to that, I thought it was very telling that Mr. Clement was saying that it does come to pre-office misconduct. Impeachment would be the only remedy that would provide it, which, if taken to its full extent, would make governors of the Federal Reserve have the kind of tenure protections that the Constitution affords to Article III judges. That is not what this statute says. That is directly in the face of the statutory language, which says cause with no further restrictions. Clearly, Congress envisioned that they could be removed for a good enough reason. And on that point, I just want to emphasize there's this colloquy about whether it should be sent back or decided now in the merits, whichever way the court comes out on that, the court should not. It should send it back with an emergency stay. And I want to emphasize two reasons there. This court, no court should hold that the misconduct that's alleged here, which is at least gross negligence, at least an inadvertent notation that is a grave misrepresentation on a mortgage document that's designed to determine the governor's interest rates, is not cause to remove a principal officer of the United States who sets interest rates for the entire country. So all the discussion of what are the outer bounds of cause, where is judicial review on that fundamental court? Neither this court or any other court should look at this and say, this is likely not cause. That sends the wrong message to the markets. It sends the wrong message to the American people who have to make correct representations to their banks when they're getting their mortgage interest rates. And the second point I would make is the remedy granted here, a preliminary injunction that runs against the president. Reinstating a principal officer of the United States is something that has never been granted before 2025 in this court or in the nation's history, and in fact, contradicts a clear holding of this court in Sawyer that a preliminary injunction is not available in equity. Those two reasons alone clearly suffice to send it if there is going to be a decision to send it back, to send it back with the emergency stay that we've asked for. And then if the court decides to sort of send the case back to have many more of these issues that we discussed today to be aired, we would urge the court, and I think that would disagree to direct the lower courts to proceed very expeditiously here. This is where our emergency stay posture. The executive has been suffering irreparable harm since early September. And the sooner that these issues are resolved, the better. Thank you. Thank you, counsel. The case is submitted.